UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FREEDOM FROM RELIGION
FOUNDATION, INC., DAN
BARKER, ANNIE LAURIE
GAYLOR, and DAVID
WILLIAMSON,

          Plaintiffs,

v.                                            Case No. 6:13-cv-922-Orl-18KRS

ORANGE COUNTY SCHOOL
BOARD,

          Defendant.

_____

## ORDER

THIS CAUSE comes for consideration on Defendant Orange County School Board's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (Doc. 19.) Plaintiffs Freedom from Religion Foundation, Inc., Dan Barker, Annie Laurie Gaylor, and David Williamson (collectively, "Plaintiffs") responded in opposition (Doc. 22), and Defendant replied (Doc. 28). For the following reasons, Defendant's motion will be granted.

### I. BACKGROUND

This case concerns the distribution of literature at schools within Defendant's district. From time to time, Defendant allows groups with no relation to Defendant to passively distribute materials at public schools within Defendant's school district provided that Defendant has approved the materials prior to distribution. (Doc. 1 ¶ 19.) On January 16, 2013, Defendant allowed World Changers of Florida ("WCF") to passively distribute copies of the New International Version Bible ("NIV Bible") to students at eleven of the public schools within Defendant's school district. (*Id.* ¶

21.)  WCF was allegedly the first outside group Defendants allowed to distribute materials in schools within Defendant's district.  (*Id.* ¶ 31.)  Plaintiffs allege that the NIV Bible "expresses a Judeo-Christian view of God and religion[.]"  (*Id.* ¶ 3.)  Plaintiffs further allege that Defendant did not "vet or read" WCF's NIV Bible prior to approving it (in its entirety) for distribution.  (*Id.* ¶¶ 23-24.)

Plaintiffs originally expressed to Defendant their belief that Defendant should simply not allow outside groups to distribute literature.  (*Id.* ¶ 26.)  Alternatively, Plaintiffs sought to arrange to distribute their own materials at schools within Defendant's district.  (*Id.* ¶ 27.)  Defendant informed Plaintiffs that Plaintiffs would have to submit the materials Plaintiffs planned to distribute in advance to ensure that they are not among the types of materials Defendant may prohibit under the Collier County Consent Decree.  (*Id.* ¶¶ 27, 28.)

This Court entered the Collier County Consent Decree and Order in *World Changers of Fla., Inc. v. Dist. Sch. Bd. of Collier Cnty., Fla.*, No. 2:10-cv-419-FtM-36SPC.  (*See* Doc. 1-1 at 23.)  In that case, the defendant, District School Board of Collier County, Florida, and WCF consented to a degree that allows WCF the same access as all other outside, non-profit organizations to a limited public forum created by the defendant in its public schools.  (*See id.* at 23-24.)  With respect to the content of the materials to be distributed, the consent decree was entered to "clarify that no decision-maker can exercise discretion to deny access to the limited public forum on basis of viewpoint[]" while also ensuring that the defendant would be able to prohibit, in advance, distribution of materials for reasons other than the viewpoints presented in those materials.  (*Id.* at 24-25, 27.)  Specifically, the consent decree would permit the District School Board of Collier County to prohibit distribution of literature that:

> (i) promotes the use of alcohol, tobacco or illegal drugs; (ii) advertises products or services for sale; (iii) is not appropriate for the age and maturity of high school

students; (iv) is pornographic, obscene or libelous; (v) violates intellectual property or privacy rights; (vi) advocates or is likely to incite imminent lawless action; or (vii) is likely to cause substantial disruption at the school despite the application of available discipline rules and procedures.

(*Id.* at 27.)   Neither party to this case is a party to the Collier County Consent Decree.   Although Defendant allegedly has no written policy regarding distribution of materials by outside groups, Defendant maintains a practice of following the policies and procedures delineated in the Collier County Consent Degree.   (Doc. 1 ¶ 29.)

On January 29, 2013, Plaintiff David Williamson, a member of the Freedom From Religion Foundation, Inc. and organizer of its Orange County chapter, the Central Florida Freethought Community, submitted materials to Defendant's counsel, John Palmerini, in an effort to obtain advance approval for distribution.   (Doc. 1 ¶¶ 6, 10, 32.)   The materials, which were critical of the Bible and religion generally, included nine "nontracts,"[1] five brochures, eight books,[2] one essay, and one sticker.   (*See id.* ¶ 33.)   Plaintiffs then voluntary rescinded three of the books that they had submitted for approval.   (*Id.* ¶ 35.)   Of the remaining materials, Defendant prohibited distribution of four "nontracts," the sole essay, four books, and the sticker.   (*Id.* ¶ 38.)[3]   Defendant set a distribution date of May 2, 2013.   (*Id.* ¶ 39.)

Plaintiffs protested Defendant's prohibition of six materials, alleging that Defendant had illegally discriminated against the viewpoints contained in those materials.   (*See* Doc. 1-1 at 14-16.) In a letter to Defendant dated April 23, 2013, Plaintiffs' counsel Andrew Seidel argued, "[e]very . . . objection to the above materials could also be made about the bible, a book that was already

---

[1] Plaintiffs describe "nontracts" as "brief, easy to read, 3 1/2 x 4 1/4-inch folded brochures" designed as "the freethought answer to ubiquitous religious tracts."   (*Id.* ¶ 34.)   "'Nontracts' . . . address many common myths about freethought or religion."   (*Id.*)

[2] Among these eight books is one "partial book"—The Age of Reason, Pt. III by Thomas Paine. (*See id.* ¶ 37-38.)

[3] Defendant prohibited the materials as being "age inappropriate," "pornographic, obscene, or libelous," or capable of producing a "substantial disruption." (Doc. 1-1 at 2-4.)   Defendant also prohibited materials that contained solicitations. (*Id.* at 4.)

approved and distributed." (*Id.* at 15-16.)   Plaintiffs again urged Defendant to close the forum to all outside groups. (*Id.* at 16.)   However, Defendant maintained that it had properly refused to allow Plaintiffs to distribute the prohibited materials. (*Id.* at 11.)   On May 2, 2013, Plaintiffs passively distributed approved materials to students at public schools within Defendant's district. (*See* Doc. 1 ¶ 7.)   The guidelines for distribution were based upon the Collier County Consent Decree and mirrored those which Defendant had imposed on WCF for their passive distribution event that occurred on January 16, 2013.   (*See* Doc. 1-1 at 47-49.)

On June 13, 2013, Plaintiffs filed their Complaint against Defendant, asserting claims for alleged violations of their First and Fourteenth Amendment rights.   Plaintiffs seek nominal damages and a declaratory judgment stating that Defendants violated their constitutional rights. (Doc. 1 ¶ 89.)   As prospective relief, Plaintiffs seek a declaratory judgment stating that Defendant cannot prohibit Plaintiffs from distributing their materials while permitting distribution of the NIV Bible, "[a] permanent injunction ordering Defendants [sic] to refrain from prohibiting Plaintiffs' literature." (*Id.*)

On or about January 3, 2014, Defendant unconditionally agreed to allow Plaintiffs to distribute the materials that Defendant had previously prohibited. (*See* Doc. 21 ¶¶ 3-4.)   Defendant ensured that Plaintiffs would be able to distribute materials at the same time and in the same manner of other groups. (*See* Doc. 21-1 at 1-3.)   Moreover, Defendant represented that it "has no intention in the future to prohibit these materials." (Doc. 21 ¶ 5.)   Although Plaintiffs acknowledged that the possibility of resolving this case through settlement increased as a result of their being allowed to distribute the previously prohibited materials, Plaintiffs maintained that further negotiations were necessary regarding Defendant's submission and distribution policies. (Doc. 22-1 at 6-7.)

Although Plaintiffs were authorized to participate in the passive distribution forum that occurred on January 16, 2014, they chose not to participate.[4]   (*See* Doc. 21-1 at 1; Doc. 22-1 ¶ 9.)

Defendant now moves to dismiss Plaintiffs' claims for prospective relief pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that those claims are moot.[5]

## II. ANALYSIS

Attacks on subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure come in two forms: facial attacks and factual attacks.   *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990).   "Facial attacks" on the complaint require the court merely examine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the complaint are taken as true for the purposes of the motion.   *Id.* at 1529.   "'Factual attacks' on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'"   *Id.* (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).   When a party's attack on subject matter jurisdiction is factual, no presumption of truth attaches to the plaintiff's allegations and a court is free to weigh evidence to determine whether it has jurisdiction.   *Lawrence*, 919 F.2d at 1529 (citing *Williamson*, 645 F.2d at 412-13).   This case presents a factual attack on subject matter jurisdiction.

Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies."   *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992).   The mootness doctrine is among the justicability limitations that Article III places on the federal judiciary.   *See*

---

[4] Williamson stated that he did not participate in the forum because Defendant's timing of its decision to approve all of Plaintiffs' materials did not afford Williamson sufficient time to prepare materials and volunteers.  (Doc. 22-1 ¶ 10.) However, Plaintiffs were aware, through a letter dated December 9, 2013, that a passive distribution event would occur on January 16, 2014.  (*See* Doc. 21-1 at 1.)
[5] Defendant explicitly recognizes that Plaintiffs' claims regarding past allegedly unconstitutional conduct will remain. (*See* Doc. 19 at 4 n.1.)

*Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328 (11th Cir. 2004) (citing *Vander Jagt v. O'Neill*, 699 F.2d 1166, 1179 (D.C. Cir. 1982) (Bork, J., concurring)). "'[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335-36 (11th Cir. 2001) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)) (alterations in original). "Plainly, if a suit is moot, it cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it." *Coral Springs St. Sys.*, 371 F.3d at 1328. "Any decision on the merits of a moot case or issue would be an impermissible advisory opinion." *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehabilitative Servs.*, 225 F.3d 1208, 1217 (11th Cir. 2000). Therefore, a moot claim must be dismissed for lack of subject matter jurisdiction. *See Al Najjar*, 273 F.3d at 1336.

A case may be rendered moot as a result of a change in circumstances or a change in the law. *Coral Springs St. Sys.*, 371 F.3d at 1328. "[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." *Id.* (quoting *Sec'y of Labor v. Burger King Corp.*, 955 F.2d 681, 684 (11th Cir. 1992)) (internal quotation marks omitted). "Because of the possibility that the defendant could merely return to his old ways, '[t]he test for mootness in cases such as this is a stringent one . . . . A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Burger King*, 955 F.2d at 684 (quoting *Greenwood Utils. Comm'n v. Hodel*, 764 F.2d 1459, 1462-63 (11th Cir. 1985)). "However, governmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities." *Coral Springs St. Sys.*, 371 F.3d at 1328-29. "[W]hen the defendant is not a private citizen but a government actor, there is a rebuttable presumption that

-6-

the objectionable behavior will *not* recur." *Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*, 382 F.3d 1276, 1283 (11th Cir. 2004) (emphasis in original). "When government laws or policies have been challenged, the Supreme Court has held almost uniformly that cessation of the challenged behavior moots the suit." *Id.* "The [Supreme] Court has rejected an assertion of mootness" in a voluntary cessation case "*only* when there is a substantial likelihood that the offending policy will be reinstated if the suit is terminated." *Id.* at 1283-84 (emphasis in original).

In this case, the circumstances are sufficiently clear that the alleged wrongful behavior— Defendant's initial prohibition of a subset of the materials that Plaintiffs sought to distribute—will not recur in the future. Defendant modeled its policy concerning passive distribution of materials by outside groups on the Collier County Consent Decree. The Collier County Consent Decree appears to be carefully balanced so as to allow outside groups to distribute materials at a limited public forum within public schools in Defendant's district while also ensuring that the materials distributed are appropriate for a school setting. Indeed, Defendant may lawfully prohibit outside groups from distributing materials that are not appropriate for distribution in a school setting with the aim of controlling student conduct in the schools. *See Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 863-64 (1982) (quoting *Tinker v. Des Moines Sch. Dist.*, 393 U.S. 503, 507 (1969)) (noting the Supreme Court's repeated emphasis of "the comprehensive authority of the States and of school officials . . . to prescribe and control conduct in the schools."). This includes prohibiting the dissemination of content that is sexually explicit, indecent, lewd, or offensive if such would "undermine the school's basic educational mission." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 684-85 (1986). In Defendant's voluntary adoption of the Collier County Consent Decree as a policy to govern the distribution of materials by outside groups, Defendant demonstrated a good faith effort to operate a limited public forum in an educational

setting in a constitutionally permissible manner while also ensuring that the forum would not undermine its schools' basic educational mission.

From the time that the events giving rise to this case occurred to the present, Defendant has maintained its use of the Collier County Consent Decree as a policy governing the limited public forum in its schools. Therefore, the circumstances in this case—allowing Plaintiffs to distribute the materials Defendant had previously prohibited—is more aptly characterized as a recommitment to existing policy than a change of policy. Recently, the United States Court of Appeals for the Ninth Circuit held that "confidence in the Government's voluntary cessation . . . is at an apex . . ." in the context of a reemphasis or recommitment to existing policy. *Rosenbrock v. Mathis*, 745 F.3d 963, 972-73 (9th Cir. 2014) (citing *Am. Cargo Transp. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010)). The *Rosebrock* court stated: "The fact that the Government's 'voluntary cessation' is more aptly described as reemphasizing, or recommitting to, an existing policy of consistent enforcement of a longstanding regulation—not as a policy change—increases our confidence that 'the challenged conduct cannot reasonably be expected to recur.'" *Id.* at 973 (quoting *White v. Lee*, 227 F.3d 1214, 1244 (9th Cir. 2000)).[6]

Defendant has unambiguously expressed its position that each of the materials Plaintiffs sought to distribute will be unconditionally allowed. Further, Plaintiffs were provided an opportunity to distribute all of the materials for which they had sought prior approval at the distribution event that occurred on January 16, 2014. The fact that Plaintiffs chose not to participate in the January 14, 2014 event is of no consequence to the Court's mootness analysis.[7] Plaintiffs

---

[6] While the Eleventh Circuit has not explicitly delineated this distinction, no binding precedent from the Eleventh Circuit is inconsistent with such a distinction.

[7] Plaintiffs' contention that they would seek to distribute new materials but have not submitted them to Defendant for review as a result of Defendant's initial rejection of some of the materials Plaintiffs previously submitted is also irrelevant. Any claim with respect to materials that have not been submitted is hypothetical and therefore outside of the Court's limited subject matter jurisdiction. *See Lujan*, 504 U.S. at 560 (quoting *Whitmore v. Ark.*, 495 U.S. 149, 155 (1990)) (a legally cognizable injury in fact must be actual or imminent rather than merely conjectural or

further argue that Defendant has not consistently applied its policy for a length of time sufficient to render their claims prospective relief moot. As support, Plaintiffs cite *Jews for Jesus*, and point to the fact that the claims in that case were moot as a result of the defendant's consistent application of a revised policy for approximately three years. 162 F.3d at 629. What Plaintiffs selectively omit about *Jews for Jesus* is that the Eleventh Circuit affirmed this Court's dismissal of the plaintiffs' claims upon the defendant lifting its allegedly unconstitutional policy a mere month after the plaintiffs initiated the lawsuit. *See id.* Therefore, despite Defendant's decision to allow the previously prohibited materials after the time Plaintiffs initiated this case and the purportedly short time since Defendant changed its stance, *Jews for Jesus* stands as precedent supporting dismissal of Plaintiffs claims for prospective relief.

In sum, Plaintiffs have not rebutted the presumption that Defendant, as a government entity, will not reengage in the purportedly unconstitutional conduct that, to date, it has voluntarily ceased. Therefore, Plaintiffs' claims for prospective relief are moot, and the Court lacks subject matter jurisdiction to adjudicate those claims.[8]

In *Jews for Jesus*, the Eleventh Circuit stated:

> If [defendant] chose[s] to reinstate [its] restrictive policies—or adopt similar ones—the courthouse door is open to [plaintiff] to reinstate its lawsuit. Under such circumstances, the case would not be moot even if the [defendant] again revoked its policies in response to the lawsuit, because such "flip-flopping" would create a reasonable expectation that [defendant] would reinstate the challenged practice at the close of the lawsuit.

_____

hypothetical).

[8] This conclusion also comports with the Supreme Court's instruction that as a result of control of public education being committed to state and local authorities, "federal courts should not ordinarily 'intervene in the resolution of conflicts which arise in the daily operation of school systems.'" *Pico*, 457 U.S. at 864 (quoting *Tinker*, 393 U.S. at 507).

*Id.* at 630.   Although the Court is satisfied that, after the conclusion of these proceedings, Defendant will not prohibit distribution of the materials that it initially refused but later allowed Plaintiffs to distribute, the Eleventh Circuit's statements from *Jews for Jesus* apply equally in this case.

### III. CONCLUSION

For the foregoing reasons, Defendant Orange County School Board's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 19) is **GRANTED**.   Plaintiffs' claims for prospective relief are **DISMISSED without prejudice** for lack of subject matter jurisdiction.

**DONE** and **ORDERED** in Orlando, Florida on this ___3___ day of July, 2014.

_____
**G. KENDALL SHARP**
SENIOR UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record